**UNITED STATES of America,
Appellee,**

v.

**Alford GAYNOR, Appellant.**

**No. 444, Docket 72–2008.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 14, 1972.

Decided Jan. 26, 1973.

Michael Young, The Legal Aid Society, New York City (Robert A. Kasanof, New York City, on the brief), for appellant.

L. Kevin Sheridan, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E. D. N. Y., and Joan S. O'Brien, Asst. U. S. Atty., of counsel), for appellee.

Before KAUFMAN, ANDERSON and OAKES, Circuit Judges.

PER CURIAM:

The question raised by this appeal relates to the admissibility of an incriminating statement made by the appellant in a courthouse elevator to a Postal Inspector who had previously interrogated him, after his arraignment and assignment of counsel but in the absence of counsel. We hold that this statement was spontaneously volunteered and did not result from any official interrogation, and hence was not obtained in violation of either Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965), or Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). It thus becomes unnecessary for us to reach the question whether it was "plain error" not to instruct the jury that a statement obtained in violation of *Miranda* may be used only in passing on credibility and not as evidence of guilt, under Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

It is undisputed that the statement made here was not a part of any interrogation, that it was not elicited by the Postal Inspector [1] and that, indeed, appellant was not asked anything by the Inspector but volunteered the statement to him.[2]

■ While the trial court ruled that "it should have been called to [appellant's] attention that he doesn't have to make the statement and that if he does make it, it will be used against him" and said "that is the only objective testimony of voluntariness," there is no suggestion by the trial court in the record that the statement was involuntary in the traditional sense of resulting from physical or psychological coercion. Rather, the court felt that for even a spontaneously volunteered statement to be legally "voluntary" it must be interrupted and the defendant cautioned that what he says might be used against him. The cases in this circuit establish that this view of the law is erroneous. United States v. Garcia, 377 F.2d 321, 324 (2d Cir.), cert. denied, 389 U.S. 991, 88 S.Ct. 489, 19 L.Ed.2d 484 (1967), points out that Massiah prevents the admissibility of incriminating statements only when "law enforcement authorities have 'deliberately elicited' incriminating statements from a defendant [them] by direct interrogation or by surreptitous means," and that "[t]he rule does not apply to spontaneous or voluntary statements made by the defendant in the presence of government agents. . . ." United States v. Maxwell, 383 F.2d 437, 443 (2d Cir. 1967), cert denied, 389 U.S. 1057, 88 S.Ct. 809, 19 L.Ed.2d 856 (1968), held admissible a similarly volunteered statement by the defendant, the court saying: "Since Agent Murphy's unchallenged testimony reveals that Aiken freely volunteered the remarks, neither Massiah nor Escobedo has been violated." See also United States v. Barone, 467 F.2d 247, at 249 (2d Cir., 1972), (Massiah inapplicable even though damaging admissions were made "at least in part in response to interrogation by the agent" because they were made not only after an express waiver of counsel had been signed but also after the suspect had had a telephone conversation with his attorney). United States v. Collins, 462 F.2d 792, 802 (2d Cir. 1972) (en banc), is not to the contrary, holding only that renewed Miranda warnings are required before the reinterrogation of a suspect who has indicated that he wishes to remain silent. Here, the appellant had given no such indication.

We therefore affirm the conviction.

---

1. The following colloquy occurred when the Government sought to introduce the inculpatory statement in its case in chief:

    Mr. Chrein: . . . I would say that—while I am not saying the agent actively solicited the statement, the agent I believe might have had an obligation to tell the defendant, "You are represented by counsel, you shouldn't talk to me."

    Miss O'Brien: Your Honor, the agent has specifically stated that he was not eliciting anything, that the statement was made purely voluntarily.

    Mr. Chrein: I am not claiming that he elicited, I am claiming that he permitted the statement to go on at a time when the man had counsel and the man was represented by counsel.

2. The testimony of the Inspector was ". . . There was no conversation. He made a certain statement. There was no request on my part to have him make the statement." The defendant himself denied making any statement in the elevator:

    Q. Did you have a discussion with Inspector O'Neill after you had spoken to me?

    A. I did not.

    Q. Had I advised you concerning whether or not you were to have any discussion with Inspector O'Neill?

    A. You did so.

    Q. And what did I tell you?

    A. You told me not to speak to anyone about this case.