[PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT



_____

No. 11-10552

_____

Agency No. A095-654-362

HAMELT RODOLFO BEDOYA-MELENDEZ,
a.k.a. Hamelt Rodolfo Bedoya,
a.k.a. Hamelt Bedoya,

Petitioner,

versus

U. S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 25, 2012)

## ON PETITION FOR REHEARING EN BANC

Before DUBINA, Chief Judge, TJOFLAT, CARNES, BARKETT, HULL, MARCUS, WILSON, PRYOR, MARTIN and JORDAN, Circuit Judges.

BY THE COURT:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure), the Suggestion of Rehearing En Banc is **DENIED.**

/s/Joel F. Dubina
CHIEF JUDGE

BARKETT, Circuit Judge, dissenting from the denial of rehearing en banc:

I dissent from the denial of rehearing en banc for the same reasons I dissented in Jimenez-Galicia v. U.S. Att'y Gen., 690 F.3d 1207 (11th Cir. 2012) (Barkett, J., dissenting). I believe that this Court's conclusion that there is no judicial review of the statutory eligibility criterion of "battered or subjected to extreme cruelty" for cancellation of removal is based on a misreading of 8 U.S.C. §1252(a)(2)(B).[1] This Court and others, when considering whether there is judicial review of the Attorney General's decisions regarding the statutory eligibility criteria for cancellation of removal or for the other four forms of relief enumerated in § 1252(a)(2)(B)(i), have read the statutory language—"any judgment regarding the granting of relief"—to mean that any decision the courts deem discretionary is

---

[1] This statutory provision provides in relevant part:

(B) Denials of discretionary relief
. . . no court shall have jurisdiction to review—

(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2).

3

unreviewable. Not only does this misconstrue the meaning of the term "judgment" as used in this statute, but it also ignores the statute's overall structure, which demonstrates that Congress, in enacting § 1252(a)(2)(B), intended to preclude judicial review of only the Attorney General's discretionary judgments and decisions that <u>Congress</u>, and not a court, has explicitly identified as such.

This limitation is apparent when considering the language of § 1252(a)(2)(B) in context, reflecting the distinction between the Attorney General's ultimate discretionary judgment to grant a specific form of immigration relief—addressed by clause (i)—and the other statutorily specified discretionary decisions of the Attorney General, including those regarding the underlying statutory prerequisites for eligibility for consideration for ultimate relief,—addressed by clause (ii). As the court noted in <u>Rodriguez v. Gonzalez</u>, 451 F.3d 60, 62 (2d Cir. 2006), "[o]btaining . . . cancellation of removal is a two-step process. First, an alien must prove eligibility by showing that he meets the statutory eligibility requirements. Second, assuming an alien satisfies the statutory requirements, the Attorney General in his discretion decides whether to grant or deny relief."

That the two-part structure of this statute is significant, is apparent in the Supreme Court's instruction that "[r]ead harmoniously, both clauses [of 8 U.S.C. § 1252(a)(2)(B)] convey that Congress barred court review of discretionary decisions

4

only when Congress itself set out the Attorney General's discretionary authority in the statute." See Kucana v. Holder, 130 S. Ct. 827, 836–37 (2010). Nonetheless, most courts have presumed that the term "judgment," as used in § 1252(a)(2)(B)(i), includes generally "decisions" that the Attorney General makes regarding statutory eligibility rather than just the ultimate discretionary judgment of the Attorney General to grant relief. This reading of the statute, however, cannot be reconciled with Congress's separate and distinct use of the term "decision" in clause (ii) of § 1252(a)(2)(B). "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (internal quotation marks omitted). Here, not only did Congress use the three separate terms "judgment," "decision," and "action" in the introductory language of § 1252(a)(2)(B), but it distinguished between "judgments" in clause (i) and "decision" or "action" in clause (ii). If we were to construe "judgment" also to include any of the other preliminary "decisions" of the Attorney General, then the distinct use of the term "judgment" becomes meaningless given Congress's separate use of the term "decision." Because "[i]t is our duty, to give effect, if possible, to every clause and word of a statute," see In re Read, 692 F.3d 1185, 1191 (11th Cir. 2012) (internal quotation

5

marks omitted), the term "judgment" as used in clause (i) cannot mean more than the ultimate discretionary judgment of the Attorney General whether to grant one of the five forms of enumerated relief.

Moreover, we cannot "ignore[] the precept that, 'in construing a statute, we do not look at one word or term in isolation, but instead we look to the entire statutory context[.]'" Poveda v. U.S. Att'y Gen., 692 F.3d 1168, 1179 (11th Cir. 2012). This means that when enacting § 1252(a)(2)(B)(i), barring court review of "any judgment" regarding one of five forms of enumerated relief, Congress was well aware that it had already specified in the five individual statutory provisions that the ultimate judgment whether to grant relief was within the Attorney General's discretion. Congress, therefore, was simply intending to eliminate judicial review of those ultimate discretionary judgments. I am persuaded that this is the most legitimate reading of clause (i) because Congress added clause (ii). By adding the further limitations in clause (ii), Congress sought to ensure that courts also could not review those decisions or actions of the Attorney General, under Subchapter II of Chapter 12 of Title 8 of the United States Code, which Congress specified to be in the discretion of the Attorney General. Thus, under clause (ii), courts must also ascertain whether Congress has designated any of the underlying eligibility criteria as discretionary. For example, under the hardship waivers of 8

6

U.S.C. § 1182(h) and 8 U.S.C. § 1182(i), Congress has explicitly and separately specified that each of the underlying statutory eligibility criteria must be "established to the satisfaction of the Attorney General." Congress, however, did not include the same or similar discretionary language regarding <u>any</u> of the eligibility criteria for cancellation of removal, including either the "exceptional and extremely unusual hardship" or "battered or subjected to extreme cruelty" requirements. Thus, these determinations by the Attorney General are not insulated from judicial review by Congress's enactment of § 1252(a)(2)(B). And there is nothing in § 1252(a)(2)(B) to suggest that courts, rather than Congress, should determine whether a particular decision, action or judgment is within the discretion of the Attorney General.

We must keep in mind that restrictions on jurisdiction must be read narrowly, <u>see</u> <u>McNary v. Haitian Refugee Ctr.</u>, 498 U.S. 479 (1991) (noting the "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action"), that courts should not assume that their jurisdiction has been repealed unless the statute says so explicitly, <u>see</u> <u>Bowen v. Michigan Acad. of Family Physicians</u>, 476 U.S. 667, 670-72 (1986), and finally that "any lingering ambiguities" in deportation statutes are to be construed in favor of the alien, <u>see</u> <u>INS v. Cardoza-Fonseca</u>, 480 U.S. 421, 449 (1987). Reading §

7

1252(a)(2)(B) to preclude judicial review of the eligibility requirement of "battered

of subjected to extreme cruelty" ignores these bedrock principles.

8